

**SO ORDERED,**

*Judge Jason D. Woodard*

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| In re: | ) | | |
|---|---|---|---|
| | ) | | |
| GEORGE A. SPEIR, | ) | Case No.: | 16-11947-JDW |
| | ) | | |
| Debtor. | ) | Chapter: | 12 |

## ORDER GRANTING IN PART, AND DENYING IN PART, OBJECTION TO CONFIRMATION (DKT. # 57)

This matter is before the Court on the *Objection to Confirmation* (Dkt. # 57) (the "Objection") filed by the chapter 12 standing trustee, Harold J. Barkley, Jr. (the "Trustee"), in the bankruptcy case of George A. Speir (the "Debtor"). The issues raised in the Objection have all been resolved (Dkt. # 96), except for the question of whether the Debtor must make all payments through the Trustee, or may instead pay his secured creditors directly. The Trustee does not receive a commission from direct payments, while he receives a ten percent commission on payments he distributes.

1

An evidentiary hearing was held on the Objection on June 21, 2018. Justin Jones appeared as the attorney for the Trustee, and Craig Geno appeared on behalf of the Debtor. Both the Debtor and the Trustee testified. At the conclusion of the hearing, the Court took the matter under advisement. The Court has considered the evidence, pleadings and relevant case law, and finds and concludes that under the unique facts and circumstances of this case, the Debtor may make all payments to secured creditors directly, except for payments due to State Bank & Trust Company ("State Bank").

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*, dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (L) and (O).

## II. FACTS[1]

The Debtor filed his chapter 12 bankruptcy petition on June 8, 2016. (Dkt. # 1) and plan of reorganization on October 17, 2016. (Dkt. # 56). Regions Bank and State Bank objected to confirmation, but both objections were resolved by agreed orders. (Dkt. # 75 and 104).

---

[1] To the extent any findings of fact are conclusions of law, they are adopted as such, and vice versa.

The plan provided that the Debtor would make payments on unsecured claims to the Trustee's office for distribution, but the Debtor would pay secured claims directly to those creditors. The Trustee was to receive his ten percent statutory compensation on the unsecured claim payments, but would receive no commission on the direct payments. The Trustee objected to the Debtor's plan, arguing, *inter alia,* that the Debtor must pay to the Trustee "a sum equal to 10% of payments made to unsecured creditors and payments to secured creditors on altered pre-petition debts, and expenses of his attorneys." (Dkt. # 57). At the confirmation hearing, the parties agreed that the plan should be confirmed with this issue reserved, and a confirmation order was entered by this Court. (Dkt. # 109).

### A. The Secured Creditors

The secured creditors who were to receive direct payments are: (1) Regions Bank ("Regions"), (2) Tallahatchie County Bank ("TCB"), (3) the Gregory Family Revocable Trust (the "Gregory Trust"), (4) Herbert Schultz ("Schultz"), and (5) State Bank. (Dkt. # 56). None of the secured creditors objected to direct payments.

The bankruptcy plan had little impact on four of the five secured creditors. Regions and TCB are sophisticated creditors. While their claims are impaired by the plan, the modification is *de minimus*. Schultz is the Debtor's

3

brother-in-law. His claim has not been substantially modified, and he did not object to confirmation. The Gregory Trust claim is unimpaired.

State Bank is the exception. State Bank is also a sophisticated creditor. Its claim includes a home loan and an equipment loan. Not only were its claims modified by the bankruptcy, those claims were modified twice. The Debtor conceded that State Bank's prepetition repayment terms were substantially modified in the chapter 12 plan. At the hearing, the Debtor testified that he was unable to make his plan payments to State Bank, and the parties entered into post-confirmation negotiations that further modified State Bank's treatment. (Dkt. # 182).

### B. The Debtor

The Debtor's testimony made clear that he is a sophisticated debtor. He was aware of the details of each of his secured creditors' claims, understood how bankruptcy modified those claims, and knew the amount and due date of each payment. He also appeared to understand the bankruptcy process, using the phrase "in the plan," detailing post-petition negotiations that had taken place, and confirming that the plan had been modified.

The Debtor's testimony also made clear that he is acting in good faith. There was no indication that he was abusing the bankruptcy process or using the bankruptcy process for any ulterior purpose. In fact, as discussed above, the majority of the secured claims have not been significantly modified.

4

This is not to say that his case has been without issue. There has been a post-confirmation modification of State Bank's claim, although he is now current on payments to State Bank. Additionally, the Debtor was unaware that he should have been separately listing the direct payments on his monthly operating reports, rather than including the payments in a generic category with other business expenses. Once he became aware of the requirement that he separately list the payments, he began doing so.

### C. The Trustee

The Trustee also testified about the statutory compensation structure and the practicality of this Trustee's situation. The Trustee's office receives a statutory fee not to exceed ten percent of the payments made under the plan, with respect to payments in an aggregate amount not to exceed $450,000, and three percent of payments made under the plan, above that amount. 28 U.S.C. § 586(e)(1). The Trustee contends that he cannot negotiate the percentage he receives—it is either ten percent or zero. Typically, half of the commission in each case pays his expenses and the other half is his compensation. If expenses exceed five percent, his compensation is decreased to make up the difference. If expenses are less than half of the commission, his compensation cannot exceed five percent, and the excess must be turned over to the U.S. Trustee System Fund. 28 U.S.C. § 586(e)(2).

The Trustee depends completely on the statutory commission. There have been times where the Trustee did not receive enough money from the commission and did not pay himself in order to pay his expenses. In September of 2017, the office only had $578 in its operating account. The U.S. Trustee's office does not intervene in these situations to bail out the chapter 12 Trustee's office.

This chapter 12 case is relatively simple and there are few creditors. Despite this, the Trustee testified that he has appeared in Oxford five times to attend court. The Trustee also attended the meeting of creditors and a Rule 2004 examination.

The fiscal year for the Trustee runs from July 1 to June 30. For the 2018 fiscal year, the Trustee has incurred $34,688 in expenses and anticipates similar budgets going forward. He is currently administering 15 cases. Based on the 2018 budget, the Trustee needs to average about $2,300 from each case, each year, just to pay expenses. He needs to average $4,600 from each case to be fully compensated.

Here, there is no dispute that the payments to unsecured creditors will go through the Trustee's office. The parties agree that payments to unsecured creditors will be $6,222 each year, yielding only $622 in annual commission.

Based on the information available to the Court,[2] it appears that if all payments to secured creditors go through the Trustee, the resulting annual commission would be in excess of $10,800.

The Debtor testified that, like most farmers, his ability to pay the ten percent on all claims is directly related to the outcome of his crop. If he has an above-average year, he can pay the commission. If he has a bad year, he will be unable to pay the commission. If he has a normal year, it would be hard for him to pay. There is no indication that the next few years will be anything but average crop years.

### III.  CONCLUSIONS OF LAW

#### A. Direct Payments Do Not Create Trustee Commission

Under 28 U.S.C. § 586(e)(2), a standing trustee collects a commission on "all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee." 28 U.S.C. § 586(e)(2). The statute is clear that a standing trustee is only entitled to a percentage fee on "payments received by" him under the plan. 28 U.S.C. § 586(e)(2). Payments may be made in one of two ways: (1) from the debtor to the trustee, who then disburses the funds to creditors, in which case the trustee supervises and disburses the payments in accordance with the plan

---

[2] The amount of the claims as reflected in the plan, agreed orders, and testimony is not as precise as one might think.

provisions; or (2) by the debtor directly, in which case the debtor pays the creditor directly, and the trustee does not receive payments to disburse. This Court previously found in this case that, according to the plain language of the statute, the trustee is compensated for the former but not the latter. (Dkt. # 112), *rev'd on other grounds*, *Barkley v. Speir*, No. 3:17-CV-00104-NBB (N.D. Miss. Feb. 5, 2018).[3] This is clearly the majority position. *See, e.g., Michel v. Beard (In re Beard),* 45 F.3d 113 (6th Cir. 1995); *Foulston v. BDT Farms, Inc. (In re BDT Farms, Inc.),* 21 F.3d 1019, 1021 (10th Cir. 1994); *Wagner v. Armstrong (In re Wagner),* 36 F.3d 723, 727 (8th Cir. 1994); *Overholt v. Farm Credit Services (In re Overholt),* 125 B.R. 202, 210 (S.D. Ohio 1990); *Matter of Pianowski,* 92 B.R. 225, 231 (Bankr. W.D. Mich. 1988); *In re Crum,* 85 B.R. 878 (Bankr. N.D. Fla.1988); *In re Cannon,* 93 B.R. 746, n. 2 (Bankr. N.D. Fla. 1988); *In re Land,* 82 B.R. 572 (Bankr. D. Colo. 1988); *In re Erickson Partnership,* 77 B.R. 738,751-53 (Bankr. D. S.D. 1987).

### B. Factors to Determine Whether Payments May Be Made Directly

There is no statutory rule outlining when payments can be made directly to secured creditors, nor are there any Fifth Circuit cases addressing this issue

---

[3] In a prior opinion in this case, this Court mistakenly found that the parties had agreed that payments could be made directly in this case. That finding was reversed and is the subject of this opinion. The prior opinion examined more fully the question of whether the Trustee is entitled to a commission when payments do not flow through his office. The Court's holding that no compensation is owed on direct payments was left undisturbed on appeal.

in a chapter 12 case.[4] While direct payments in chapter 12 cases are contemplated by the Bankruptcy Code[5] (*see* 11 U.S.C. §§ 1226; 1225(a)(5)(B)(ii)) and are allowed as a general rule, the trustee is still the primary party responsible for administration of the estate. 11 U.S.C. §§ 1202(b); 1226(a). Whether to allow a debtor to make payments directly to secured creditors is within the discretion of the bankruptcy court. *Erickson*, 83 B.R. at 728; *In re Hagensick*, 73 B.R. 710, 713 (Bankr. N.D. Iowa. 1987).

Courts have taken three approaches to proposed direct payments. The first approach is a blanket rule prohibiting debtors from paying impaired secured creditors directly under any circumstances. *See Fulkrod v. Savage (In re Fulkrod)*, 973 F.2d 801 (9th Cir. 1992); *In re Marriot*, 161 B.R. 816 (Bankr. S.D. Ill. 1994). The second approach is a blanket rule allowing debtors to pay secured creditors directly, regardless of their impaired status. *See In re*

---

[4] The Fifth Circuit has addressed this issue in a chapter 13 case and held:

> If the bankruptcy court concludes that the debtor's acting as disbursing agent with respect to the current mortgage payments will not impair the debtor's ability to make all payments under, and to comply with, the plan, then the court is obligated to confirm the plan, assuming in all other respects with § 1325(a).

*Matter of Foster*, 670 F.2d 478, 486-88 (5th Cir. 1982). Additionally, the Fifth Circuit stated that the degree of responsibility of the debtor and his reasons for filing a chapter 13 may be significant. *Id.* at 487. The Fifth Circuit also noted that whether the debtor can make payments directly is within the bankruptcy court's discretion. *Id.* at 486.

[5] The Bankruptcy Code is defined as Title 11 of the United States Code.

*Wagner*, 36 F.3d 723, 726 (8th Cir. 1994); *In re Crum*, 85 B.R. 878 (Bankr. D. 1988).

This Court adopts the third approach, used by the majority of courts that have addressed the issue, which employs a number of factors to determine whether to allow direct payments on a case-by-case basis. *See In re Beard*, 134 B.R. 239 (Bankr. S.D. Ohio 1991), *aff'd* 454 F.3d 113, 116 (6th Cir. 1995); *In re Pianowski*, 92 B.R. 225 (Bankr. W.D. Mich. 1988). Under this approach, the majority of courts have used the *Pianowski* factors. *Pianowski*, 92 B.R. at 233-34; *Westpfahl v. Clark (In re Westpfahl)*, 168 B.R. 337 (Bankr. C.D. Ill. 1994); *In re Martens*, 98 B.R. 530 (Bankr. D. Colo. 1989); *In re Seamons*, 131 B.R. 459 (Bankr. D. Idaho 1991); *In re Golden*, 131 B.R. 201 (Bankr. N.D. Fla. 1991).[6]

A determination of whether payments will be made direct or through the trustee should be made on a case-by-case basis and, "within a given case, on an instance-by-instance basis." *Pianowski*, 92 B.R. at 233. This Court has determined that, while not bound by the *Pianowski* factors, those factors are

---

[6] Some courts have used the *Erickson* test, which was subsumed, for the most part, within *Pianowski*. *In re Erickson Partnership*, 77 B.R. 738, 747-48 (Bankr. S.D. Ill. 1988), *aff'd* 83 B.R. 725 (D. S.D. 1988); *In re Cannon*, 93 B.R. 746 (Bankr. N.D. Fla. 1988). A few courts have considered different elements or a mixture of tests when making a determination. *In re McCann*, 202 B.R. 824 (Bankr. N.D. N.Y. 1996) (did not use any specific factors, just a case by case determination); *In re Kline*, 94 B.R. 557 (Bankr. D. Colo. 1988) (only allows impaired secured creditors to be paid direct if the debt will be fully satisfied by the plan); *In re Teigen*, 142 B.R. 397 (Bankr. D. Mont. 1992) (used eleven of the thirteen *Pianowski* factors and held that generally payments should go through the trustee, but courts should consider the impact of the commission on the debtor's ability to reorganize and the adequacy of the trustee's compensation).

instructive and summarize the considerations of courts that allow direct payments. In general, those factors are:

1. the past history of the debtor;

2. the business acumen of the debtor;

3. the debtor's post-filing compliance with statutory and court-imposed duties;

4. the good faith of the debtor;

5. the ability of the debtor to achieve meaningful reorganization absent direct payments;

6. the plan treatment of each creditor to which a direct payment is proposed to be made;

7. the consent, or lack thereof, by the affected creditor to the proposed plan treatment;

8. the legal sophistication, incentive and ability of the affected creditor to monitor compliance;

9. the ability of the trustee and the court to monitor future direct payments;

10. the potential burden on the Chapter 12 trustee;

11. the possible effect upon the trustee's salary or funding of the U.S. Trustee system;

12. the potential for abuse of the bankruptcy system;

13. the existence of other unique or special circumstances.

92 B.R. at 243-44.  Each factor may be considered, although different weight is afforded to each factor in a given case, or even to different claims in the same case.

### 1. Debtor's Past History

The past history of the debtor considers a debtor's motivation for filing bankruptcy.  *Pianowski*, 92 B.R. at 233.  This Debtor has demonstrated a sincere desire to reorganize and adjust his debtor-creditor relationships as permitted by law.  He has not filed bankruptcy previously.  This factor weighs in favor of direct payments.

### 2. Debtor's Business Acumen

This factor focuses on a debtor's management abilities.  *Id.*  The inquiry is whether a debtor is capable of maintaining accurate and reliable records of the farming operation and the future payments that would be made directly to creditors.  *Martens*, 98 B.R. at 534.

This Debtor has demonstrated sufficient business acumen.  He was aware of the details of each transaction he engaged in and knew his payment due dates.  He understood the state of his affairs pre-bankruptcy and how they were affected by the bankruptcy case.  He used bankruptcy terms of art in his testimony and understood the post-confirmation negotiations that have taken place.  This factor also weighs in favor of direct payments.

### 3. Debtor's Post-Filing Compliance

A debtor's post-filing compliance with statutory and court-imposed duties looks to a debtor's compliance with court orders and whether the debtor has accurately and timely filed any required reports. *Pianowski*, 92 B.R. at 233. This factor examines the Debtor's pre-petition and post-petition performance and whether there is a need for trustee oversight. *Martens*, 98 B.R. at 535.

This Debtor has been forced to further modify some of his payment terms because of his financial inability to comply with the confirmation order, but only with regard to State Bank. He has not always complied with the Court's orders, but has worked with creditors to resolve all issues and is currently in compliance. The Debtor has filed all monthly operating reports. This factor weighs against the Debtor, but only in regard to the State Bank payments.

### 4. Debtor's Good Faith

The good faith of a debtor looks for an ulterior motive for direct payments. *Pianowski*, 92 B.R. at 233. This Debtor has proposed paying direct in good faith. There is no indication of the Debtor playing any games. He has been involved in his case and running his business and understands how the two intersect. The Debtor is making his best effort to complete his case. This factor weighs in favor of direct payments.

### *5. Debtor's Ability to Reorganize Absent Direct Payments*

This factor examines whether the plan is feasible if payments are made through the trustee. *Id.* Basically, the question is whether this Debtor is able to make payments to all creditors plus a ten percent fee. The answer here is unclear. The Debtor testified that in an above-average year, he would be able to pay the full trustee commission, but in a bad year, he could not. In a normal year, it would be tough. Absent any known factors indicating that the future crop years will be better or worse than normal, the Court must assume that the Debtor will have a normal year every year.[7] The Debtor did not indicate that *any* amount of additional trustee's commission would cause his plan to fail, but he did testify that it would be difficult for him to pay an additional ten percent if *all* of his payments to secured creditors went through the Trustee. This factor requires some balancing of interests.

### *6. Creditor's Plan Treatment*

The plan treatment of each direct payee examines the extent of modification of each creditor's claim under the plan. *Pianowski*, 92 B.R. at 233. Pre-petition defaults and whether the debtor is current are also considered. *Id.* This requires the Court to make a determination for each claim. *Id.*

---

[7] Of course, the Debtor's farming income is dependent on factors other than just the crop itself. Large crop yields nationwide could drive down prices. Labor costs fluctuate. Tariffs may have an impact.

14

This factor is of particular importance in this case. The majority of the creditors here are substantially unaffected by the bankruptcy case. The pre-petition terms are essentially reflected in the confirmed plan, with the exception of State Bank. Little negotiation took place regarding the treatment of the claims, again with exception of State Bank.

State Bank's claim has been substantially modified in a way that would not be possible but for the bankruptcy system. That claim was not only modified in the plan, but was again modified post-confirmation. The Debtor's use of the bankruptcy process to substantially modify State Bank's claim weighs in favor of the Trustee in regard to the State Bank claim, but not the other secured creditors.

### 7. Creditor's Consent

The consent of the affected creditors must also be considered on a claim-by-claim basis. *Pianowski*, 92 B.R. at 233; *Westpfahl*, 168 B.R. at 365. None of the creditors have objected to direct payments. State Bank and Regions filed objections to confirmation, but both were resolved by agreed orders. Thus, the Debtor's plan was consensual. This factor weighs in favor of the Debtor.

### 8. Creditors' Sophistication and Ability to Monitor

This factor considers the motivation of the creditors to monitor compliance and the burden on them to do so. *Pianowski*, 92 B.R. at 234. This case is not complex. Basically, the creditors just need to monitor whether

15

payments are received according to the terms of the confirmed plan.[8] The majority of affected creditors in this case are banks with the means and motivation to monitor direct payments. The debts are large enough to warrant their efforts and, because of their resources, it will not be a burden to monitor the case.

The only non-bank secured creditors are the Gregory Trust and Schultz. The Gregory Trust's claim is unmodified, so there will be no additional post-bankruptcy burden. The Schultz claim is paid to an individual, but is a simple annual payment that does not require close monitoring. Thus, this factor weighs in favor of direct payments.

### 9. *Ability of the Trustee and Court to Monitor*

The ability of a trustee and the court to monitor direct payments considers whether the debtor has demonstrated that he will provide reports which evidence that the payments have been timely made. *Id.* The Debtor has been filing his monthly operating reports, but was unaware that the direct payments were to be separately listed. He now understands this and began doing so before the hearing. It will take less than five minutes for the Trustee to monitor compliance by examining the monthly operating reports. This factor weighs in favor of the Debtor.

---

[8] When a case is complex and has unsophisticated creditors, the trustee's close monitoring is helpful to ensure payments are made and the debtor does not discriminate among his creditors. That is not the case here.

### 10. *Burden on the Chapter 12 Trustee*

In determining the potential burden on a trustee, the court must evaluate whether direct supervision by the trustee will be required to ensure a direct payment will be made. *Pianowski*, 92 B.R. at 233. There are few creditors here and there will be no inordinate burden on the Trustee to monitor these direct payments, which can easily be done by checking the monthly operating reports. This factor weighs in favor of the Debtor.

### 11. *Effect on Chapter 12 Trustee Salary and U.S. Trustee System*

The possible effect upon a trustee's salary or funding of the U.S. Trustee system is a significant consideration in this case. This factor is focused on determining if direct payments will result in a trustee receiving less than adequate compensation for his efforts, duties, and responsibilities as it relates to the case. *Id*. This factor also considers if direct payments would undermine the funding of the U.S. Trustee office. *Id.*

To be fully compensated, the Trustee needs to receive an average of $4,600 from each case each year, based on current circumstances. If none of the payments to secured creditors go through the Trustee's office in this case, the Trustee will receive only $622 annually for a case that has required five hearings thus far. On the other hand, if all of the payments to secured creditors go through the Trustee's office, the Trustee would receive in excess of $10,800

annually for a case that has been, apart from this issue, average. This factor requires some balancing. The Trustee should be compensated for his work in this case, but he should not receive a windfall that will result in a plan that is not feasible for the Debtor.

### 12.  *Potential for Abuse*

The potential for abuse of the bankruptcy system factor is focused on the possibility of preferential treatment between or among the creditors receiving direct payments and those that will not. *Pianowski*, 92 B.R. at 233. Schultz is the Debtor's brother-in-law, but payment is made once a year. It would be relatively easy to monitor any preferential treatment by reviewing the monthly operating reports filed by the Debtor. There is no indication that the Debtor is trying to abuse the bankruptcy system through direct payments. The Debtor has demonstrated that he is acting in good faith. This factor weighs in favor of the Debtor.

### 13.  *Special Circumstances*

The unique or special circumstances that exist in this case relate to the inordinate spread between the amount of compensation the Trustee's office would receive if all of the secured creditors are paid through their office or if none are. The Trustee must be compensated for his work, but the Debtor needs a feasible plan.

18

These factors are to be applied and considered in regard to each secured creditor within a case. The factors in this case point to all of the payments being paid directly, except for those to State Bank. Because the Debtor has used the bankruptcy process to substantially modify the claim of State Bank, the Debtor will be required to pay this claim through the Trustee's office. The Debtor has entered into an arrangement with State Bank that would have been unavailable but for the bankruptcy process. The remaining creditors have remained mostly unaffected by the Debtor's bankruptcy.

Payment of the State Bank claim through the Trustee results in additional compensation to the Trustee of about $6,800, for a total of about $7,400 annually. This fairly compensates the Trustee but results in a feasible plan. Thus, the totality of the circumstances and consideration of the factors indicate that the Debtor should make all payments directly to secured creditors, except those to State Bank.

### C. CONCLUSION

Again, the Court can use its discretion in deciding if a debtor can make payments direct and in determining how to apply these factors based on the facts of the case before it. *Foster*, 670 F.2d at 486 (same conclusion in a chapter 13 case); *Erickson*, 83 B.R. at 728; *Hagensick*, 73 B.R. at 713. Because of the unique facts and circumstances of this case, the factors weigh in favor of the Debtor paying all secured creditors directly except State Bank.

19

**ORDERED, ADJUDGED** and **DECREED** that the Objection (Dkt. # 57) is **SUSTAINED IN PART** and **OVERRULED IN PART.** The confirmation order is amended to provide that the Debtor will pay the State Bank claim through the Trustee's office, with the Trustee receiving his statutory fee. The Debtor is further reminded that all monthly operating reports must include a line item listing each payment to each secured creditor.

##END OF ORDER##